**Harry M. KECHIJIAN, Plaintiff,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, the United States of America, and Blue Shield of Rhode Island, Defendants.**

Civ. A. No. 74–205.

United States District Court,
D. Rhode Island.

Oct. 12, 1978.

Edward L. Gnys, Jr., Providence, R. I., for plaintiff.

Lawrence E. Burstein, Asst. Regional Atty., U. S. Dept. of Health, Education & Welfare, Boston, Mass., Edwin H. Hastings, Providence, R. I., for defendants.

## OPINION

DAY, Senior District Judge.

Pending before the Court in this civil action are motions by the defendant Secretary of Health, Education and Welfare to dismiss or in the alternative for summary judgment.[1] Having held numerous conferences and hearings, together with having required the filing of various briefs and memoranda in this complex Medicare reimbursement action, the Court is now ready to decide the pre-trial aspects of this time-consuming controversy.

Dr. Harry M. Kechijian is a physician who brought this action to recover $27,-253.80 allegedly due him under the Medicare Act, 42 U.S.C. § 1395, et seq. and the regulations thereunder, 20 C.F.R. § 405. The defendants herein, the Secretary of Health, Education and Welfare (the "Secretary"), and Blue Shield of Rhode Island ("Blue Shield"), the Medicare carrier, justify their withholdings of such monies as a set-off to plaintiff's alleged overutilization and misutilization of certain medical procedures used by plaintiff primarily in the treatment of elderly arthritic patients. In support of their actions, the defendants assert that their authority is based upon the Medicare Act together with applicable case law; similarly, plaintiff seeks recovery under said Act and cases related thereto. In addition, another aspect has developed during the progression of this action. The plaintiff contends that the acts of the defendants were unconstitutional, while the defendants avow that their actions pass constitutional muster.

Mired in the intricacies of the Medicare Act almost to the point of stalemate, slow progress has been made in resolving this case. However, the Court of Appeals for the First Circuit has substantially clarified many Medicare reimbursement issues in Cervoni v. Secretary of Health, Education and Welfare, 581 F.2d 1010 (1978). This Court will therefore look to both the analysis and dictates found in Cervoni for a resolution of this matter.[2]

The Court hereby finds these facts to be pertinent to a determination of the pending motions:

On December 9, 1971, Blue Shield concluded that plaintiff's office practice was in excess of established utilization of services norms. Blue Shield thereafter notified plaintiff on April 10, 1972, that there would be a delay in the processing of his Medicare claims. On May 25, 1972 Dr. Kechijian was asked to attend a meeting of the State Peer

---

1. Plaintiff's motion to compel with respect to certain discovery matters has been stayed pending resolution of the instant motions.

2. For an excellent statement of the background of Medicare, See Cervoni, supra at 1012.

Review Committee of The Rhode Island Medical Society in order to explain certain aspects of his Medicare cases from October 1, 1971 to March 1, 1972 which had been referred to said Committee by Blue Shield. Said meeting, at which plaintiff appeared, was held on May 30, 1972. Plaintiff, on June 8, 1972, was advised that evidence of overutilization and misutilization of certain drugs by him was found by said Committee, and that he had the right to appeal such decision. No appeal was apparently taken. Plaintiff thereafter did not receive reimbursement for his 1972 claims which he submitted to Blue Shield. On January 1, 1973, Dr. Kechijian decided to withdraw from participation in the Medicare program by no longer accepting Medicare assignments from patients as of March 3, 1973. On January 8, 1974, and during several months prior thereto, plaintiff wrote to the Social Security Administration and expressed concern about his unpaid 1972 Medicare claims. A reply dated February 7, 1974, indicated that this matter would be investigated. Blue Shield next advised plaintiff, on March 22, 1974, that settlement of his claims would be attempted.

On April 30, 1974, Blue Shield advised Dr. Kechijian that he had been overpaid by the Medicare program from January, 1970 to December, 1972, based upon the above-mentioned State Peer Review Committee's findings. The plaintiff was also advised that if he failed to refund $26,199.85 to Blue Shield a set-off of $27,253.80 of his processed claims would be made.[3] Additionally, Dr. Kechijian was informed that he had the right to request a review of his case if he requested such review within six months after the April 30, 1974 letter. The plaintiff, however, did not seek such review. On June 11, 1974, Blue Shield agents advised Dr. Kechijian that he could file a "Request for Review of Part B Medicare Claims." Finally, on October 4, 1974, Blue Shield forwarded to plaintiff a check which represented the balance due to Dr. Kechijian after the above-mentioned set-off had been made. Plaintiff commenced this action on August 15, 1974.

Although the motions filed by the defendant herein primarily concern Rules 56 and 12(b)(6) of the Federal Rules of Civil Procedure, this Court, in light of the recent *Cervoni* decision, *supra,* feels obligated to discuss the fundamental issue of whether or not subject matter jurisdiction properly exists here. The well-accepted doctrine that a court must dismiss an action sua sponte where there is a lack of jurisdiction has been embodied in the Federal Rules of Civil Procedure. *See* Rule 12(h)(3), FRCP. Thus, using the guidelines established in *Cervoni,* the Court will now undertake an analysis of possible bases for jurisdiction in order to determine if this Court is possessed of the requisite subject matter jurisdiction to hear this action.

## I. THE ADMINISTRATIVE PROCEDURE ACT DOES NOT FURNISH JURISDICTION OVER THIS CONTROVERSY.

█ The above statement is beyond contention, and deserves little discussion by this Court. *See Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), and *Cervoni, supra* at 1015.

## II. THE MEDICARE ACT ITSELF (42 U.S.C. § 1395 *et seq.*) SIMILARLY PROVIDES NO JURISDICTION.

The *Cervoni* Court, *supra* at 1015 stated:

"The [Medicare] Act *does not* provide judicial review for determinations of benefits under Part B. However, when payment on a claim under Part B is denied, the beneficiary (patient) has a right to an 'informal review determination', which is conducted by the carrier. § 1395u(b)(3)(C): 20 C.F.R. 405.801(a) and 405.807–405.812. The beneficiary may seek review of that decision at a hearing also conducted by the carrier. 20 C.F.R. 405.820–405.835. A physician, as assignee

---

**3.** *See generally Peterson v. Weinberger,* 508 F.2d 45 (5th Cir. 1975), cert. denied, 423 U.S. 830, 96 S.Ct. 50, 46 L.Ed.2d 47 (1975).

of the beneficiary, has the same right to review as the beneficiary. 20 C.F.R. 405.-801(a). . . . [However,] [t]he Act *does not explicitly provide for review of a physician's claims in general . . . .*" (Emphasis added.)

Since it appears that Dr. Kechijian did not appeal the June 8, 1972 overutilization decision, and furthermore did not appeal the April 30, 1974 set-off notice, he failed to discharge the burden imposed upon him pursuant to the above-enumerated statutory sections for review of the denial of his payment claims. Moreover, since the Medicare Act does not specifically provide for review of a physician's claims in general, this Court cannot look to such act for jurisdiction to determine the merits of plaintiff's action.

## III. NO FEDERAL QUESTION JURISDICTION CAN BE FOUND IN THIS ACTION.

■ After a thorough examination of applicable case law, the Court of Appeals for the First Circuit in *Cervoni, supra* at 1015–1017, recently decided that 28 U.S.C. § 1331 (federal question jurisdiction), does not apply to a Part B Medicare reimbursement action because of the existence of § 205(h) of the Social Security Act, 42 U.S.C. § 405(h), which is incorporated into the Medicare Act by 42 U.S.C. § 1395ii. Said section provides, inter alia, that "*No* findings of fact or decision of the Secretary *shall* be reviewed by any person, *tribunal,* or governmental agency except as herein provided." (Emphasis added.) The *Cervoni* Court also explained that several other Circuit Courts have interpreted the Supreme Court's holding in *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) to foreclose jurisdiction under § 1331 in reimbursement actions emanating from the Medicare Act. For example, in *Dr. John T. MacDonald Foundation, Inc. v. Cali-*

*fano,* 571 F.2d 328, 331 (5th Cir. 1978), another recent case, it was stated:

"  .  .  .  although Congress expressly incorporated § 405(h) by reference, they failed to incorporate § 405(g) which provides the administrative and judicial review procedures for the Social Security Act. Assuming that when Congress incorporates sections specifically they intend to eschew the remainder, the conclusion is inescapable that § 405(h) was intended to preclude all review. We therefore hold that § 405(h), incorporated into § 1395ii of the Medicare Act, precludes all review of the Secretary's decisions by federal district courts brought under § 1331."

This Court therefore concludes that § 1331 generally cannot provide jurisdiction in a Medicare reimbursement action. However, this Court is mindful of the exception to this proposition, whereby federal question jurisdiction might be available if a colorable constitutional claim is shown.

On August 15, 1978, consolidated hearings were conducted by this Court on defendant's motions, together with a hearing on Dr. Kechijian's potential constitutional allegations.[4] Such constitutional claims involve alleged due process violations primarily with respect to the recoupment procedure in this action rather than with the overutilization determination per se.

■ This Court initially has serious questions as to whether plaintiff even possessed a protectable property interest in this action because of the defendant's right of recoupment which, as will be examined later, plaintiff failed to challenge administratively.[5] That this conclusion is correct can be confirmed by examining *Cervoni, supra* at 1018–1019:

"The Medicare Part B program is nothing more than a governmental insurance program for the aged. As such the real parties in interest are the beneficiaries;

---

4. It should be noted that the First Circuit in *Cervoni, supra* at 1019, unlike the Fifth Circuit in *MacDonald, supra,* chose not to transfer any foreseeable constitutional damage claims to the Court of Claims.

5. Conceptually, this Court views any property rights which plaintiff might have had as having been dissolved or superseded by the government's right of recoupment.

physicians are parties in interest only as assignees of the beneficiaries. . . . [and] do not have a protectable property interest in their continuing eligibility to bill for reimbursement under Part B. . . . Since Dr. Cervoni possessed *no protectable property interest,* the Secretary was not required to give him a hearing . . . ."[6] (Emphasis added.) Without a protectable property interest, no due process violation can be found.

Assuming *arguendo,* however, that a protectable property interest could be found, this Court nonetheless is not convinced that the defendants committed procedural due process violations. Although plaintiff characterizes defendant's delay in payment as a "suspension" which required formal notice and hearing, from the facts in this case, it appears that the carrier was merely withholding payments to Dr. Kechijian pending a thorough examination of his records. Moreover, the set-off used by the carrier has been approved by other courts. *See Peterson, supra. See also Mount Sinai Hospital of Greater Miami, Inc. v. Weinberger,* 517 F.2d 329 (5th Cir. 1975), cert. denied, 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176 (1976).

In spite of the fact that this Court has some reservations about the defendants' precise manner of proceeding herein, after having examined the complex facts in this action, and after having held a review hearing on the constitutional issues herein, it is the considered opinion of the Court that the withholding procedures employed by the defendants were not so noxious as to be constitutionally violative of plaintiff's due process rights.[7] This conclusion becomes inescapable in light of the fact that plaintiff, as will be seen shortly, failed to pursue

administrative remedies which were readily available to him; any later complaints of due process violations, under the circumstances of this action, do not rise to a colorable constitutional claim.

Therefore, although Dr. Kechijian has raised due process constitutional issues during the course of this action, such contentions do not rise to the levels necessary to provide him with an alternative source of federal question jurisdiction.

## IV. THE EXHAUSTION DOCTRINE IS APPLICABLE TO THE FACTS IN THIS CASE AND PROVIDES YET ANOTHER REASON WHY PLAINTIFF'S ACTION CANNOT LIE IN THIS COURT.

■ An additional but equally important reason exists why this Court cannot hear plaintiff's claims. As previously stated, on April 30, 1974, Blue Shield advised Dr. Kechijian that it had determined that he had been overpaid, and that a set-off would be made if plaintiff failed to refund $26,199.85. Dr. Kechijian was also informed that he had the right to request a review of his case if he requested such review within six months after the April 30, 1974 letter. Dr. Kechijian admittedly did not seek such review. This constitutes a failure by plaintiff to exhaust the administrative remedies which were readily available to him. *See Weinreb v. United Medical Service, Inc.,* 392 F.Supp. 45 (S.D.N.Y.1975). Because of plaintiff's failure to exhaust administrative remedies, judicial review may be properly barred.[8] In *McKart v. United States,* 395 U.S. 185, 193–195, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969), the Supreme Court explained the theoretical underpinnings of this doctrine:

---

**6.** Since this Court likewise finds that the instant plaintiff had no protectable property interest (which would negate the necessity for a pre-deprivation hearing), the Court does not reach the issue in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), of whether full relief could have been obtained at a post-deprivation hearing.

**7.** As in *Cervoni, supra* at 1017, this Court will not decide whether § 405(h) is a bar to due

process constitutional claims, since no colorable constitutional issue has been found herein.

**8.** Thus, plaintiff's assertions that compliance with 42 U.S.C. §§ 1395y(a)(1), (d)(2), 1395pp(a), and 20 C.F.R. § 405.371 was lacking in this action should have been properly raised at an administrative review hearing of which plaintiff was advised in the April 30, 1974 letter.

"A primary purpose is . . . the avoidance of premature interruption of the administrative process. . . . And since agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise. And of course it is generally more efficient for the administrative process to go forward without interruption than it is to permit the parties to seek aid from the courts at various intermediate stages.

. . . [t]he function of the agency and the particular decision sought to be reviewed involve exercise of discretionary powers granted the agency by Congress, or require application of special expertise.

. . . Particularly, judicial review may be hindered by the failure of the litigant to allow the agency to make a factual record, or to exercise its discretion or apply its expertise. . . . Certain very practical notions of judicial efficiency come into play as well. A complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene. And notions of administrative autonomy require that the agency be given a chance to discover and correct its own errors. Finally, it is possible that frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures."

This Court therefore endorses this aptly-stated dicta which has been propounded by the Supreme Court. Thus, just as this Court has examined potential sources of jurisdiction and found that said jurisdiction is lacking in this action, so too must the Court now, based on exhaustion doctrine considerations, further find that judicial review is also barred because of plaintiff's failure to exhaust his administrative remedies.

In view of the aforementioned reasons, the present action is hereby dismissed without costs. Counsel for defendants will prepare and present for entry an order in conformity with this opinion.