**Dr. Emanuel PUSHKIN et al.,
Plaintiffs-Appellants,**

v.

**Joseph A. CALIFANO, Jr., Secretary of
Health, Education and Welfare,
Defendant-Appellee.**

No. 77–2401.

United States Court of Appeals,
Fifth Circuit.

Aug. 8, 1979.

---

Bruce S. Rogow, Miami, Fla., for plaintiffs-appellants.

Robert E. Kopp, Alfred Mollin, Dept. of Justice, Washington, D. C., for defendant-appellee.

Before WISDOM, CLARK and FAY, Circuit Judges.

CHARLES CLARK, Circuit Judge:

This appeal considers the limitation by Congress of federal court jurisdiction over questions arising under the Medicare Act, 42 U.S.C.A. § 1395, *et seq.* Appellants challenge the constitutionality of the statute defining reimbursable services under Part B of the Medicare Act and the validity of a regulation promulgated thereunder. Because the constitutional challenge to the statute is insubstantial and a forum is available in which the attack on the regulation can be adjudicated, it is not necessary to decide whether Congress could totally preclude judicial review of its legislative actions.[1] The appeal is dismissed for lack of jurisdiction.

## I.

Several licensed optometrists initiated this action in federal district court for injunctive and declaratory relief in a constitutional challenge to that part of the Medicare Act, 42 U.S.C.A. § 1395x(r), which for most purposes excludes doctors of optometry from the definition of "physician" under the Medicare Part B Health Insurance Program. Part B of the Medicare Act, 42 U.S.C.A. § 1395j–1395w, is a voluntary health insurance program in which a qualifying individual who obtains a covered service can either pay for the service and request reimbursement or assign the right of reimbursement to the person providing the service.[2] Functions covered by Part B are limited to certain "medical and other health services," 42 U.S.C.A. § 1395k, which include "physician's services," 42 U.S.C.A. § 1395x(s)(1); that is, professional services performed by "physicians." 42 U.S.C.A. § 1395x(q).

1. This question is as yet unanswered by the Supreme Court. *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974); *Dr. John T. MacDonald Foundation v. Califano,* 571 F.2d 328 (5th Cir.) (en banc), *cert. denied,* 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978); *American Ass'n of Councils of Medical Staffs v. Califano,* 575 F.2d 1367 (5th Cir. 1978).

2. The Act consists of two complementary, separately financed programs. The basic plan in Part A provides protection against the costs of hospital and related post-hospital services, without charge, to qualifying elderly or disabled persons. 42 U.S.C.A. §§ 1395c, 1395d. Part B is a supplemental voluntary program of insurance which relies on the payment of periodic premiums to a trust fund which is used to defray beneficiaries' costs of physicians and other medical and health services. 42 U.S.C.A. §§ 1395j, 1395k.

Section 1395x(r), the section of Part B of the Act challenged by plaintiffs, defines the term "physician" in certain enumerated categories including

(1) a [licensed] doctor of medicine or osteopathy . · . ., (4) a doctor of optometry who is legally authorized to practice optometry by the State in which he performs such function, but only with respect to establishing the necessity for prosthetic lenses.

To the extent the statutory definition of "physicians" limits its inclusion of the plaintiff-optometrists, their patients cannot be reimbursed or assign the right of reimbursement for optometric services. Plaintiffs argue that doctors of medicine or osteopathy, whose qualifying patients are always entitled to reimbursement, may perform many of the identical diagnostic services performed by doctors of optometry. Yet unless the optometric services are for the purpose of establishing the necessity for prosthetic lenses, their patients cannot receive Part B reimbursement. This overlap of services, plaintiffs say, makes the statutory classification excluding their patients from the benefits of the Act arbitrary, irrational, and not justified by any governmental interest. Thus, they claim that § 1395x(r) violates their right to equal protection under the fifth amendment.

Alternatively, plaintiffs challenge the validity of a regulation, 42 C.F.R. § 405.232c, promulgated by the Secretary to implement § 1395x(r), which states:

The prescription or order of a doctor of optometry will be accepted as evidence of the medical need for prosthetic lenses. However, optometric examinations for any purpose are not covered.

They ask that the regulation be declared void because it cannot be reconciled with the definition of "physician" in § 1395x(r)(4) as written.

Jurisdiction was invoked under 28 U.S.C.A. §§ 1331(a), 1346(a)(2), and 1361. The district court dismissed the action for failure to exhaust available administrative remedies.

## II.

Congress enacted the Medicare Act as part of the Social Security Act, incorporating the latter Act's limitation on federal court involvement. Section 205(h) of the Social Security Act, expressly incorporated into the Medicare Act by 42 U.S.C.A. § 1395ii, provides:

The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 [presently including §§ 1331 and 1346] of Title 28 to recover on any claim arising under this subchapter.

In *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the Supreme Court analyzed the language of § 205(h) to determine how it affected the Court's jurisdiction over a constitutional challenge to a provision of the Social Security Act classifying eligible beneficiaries. It found that the third sentence of § 205(h) totally "preclude[d] resort to federal-question jurisdiction for the adjudication of appellees' constitutional [challenges]." 422 U.S. at 761, 95 S.Ct. at 2464–65. However, the Court was not faced with a situation in which absolutely no judicial consideration of the constitutional issue was available, because a separate section of the Social Security Act, 42 U.S.C.A. § 405(g), contains specific procedures for raising claims under the Act, culminating with judicial review in a federal district court.

The Medicare Act has no provision comparable to § 405(g) setting forth the precise avenues of review in a case such as this.[3] Yet, absence of a statutory mechanism permitting the judicial scrutiny of claims under the Medicare Act did not force this court in

---

**3.** Section 405(g) has been incorporated into Medicare procedures to a limited extent not relevant here. 42 U.S.C.A. § 1395ff(c). *See also* 42 U.S.C.A. § 1395oo(f).

*Dr. John T. MacDonald Foundation v. Califano,* 571 F.2d 328 (5th Cir.) (en banc), *cert. denied,* 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978), to read the third sentence of § 405(h) any less broadly than *Salfi* did in the context of the Social Security Act. In *MacDonald Foundation* this court was presented with a constitutional challenge to the Secretary's decision to reduce reimbursable costs under Part A of the Medicare Act in certain circumstances.[4] The en banc court, relying on *Salfi,* concluded that § 405(h) "precludes all review of the Secretary's decisions by federal district courts brought under [28 U.S.C.A.] § 1331," 571 F.2d at 331, but added that judicial review of the constitutional question before it was not thereby totally barred. It pointed out that the Court of Claims in *Whitecliff, Inc. v. United States,* 536 F.2d 347, 210 Ct.Cl. 53 (1976), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977), had previously asserted jurisdiction under 28 U.S.C.A. § 1491 to review constitutional and statutory claims against a decision by the Secretary despite § 405(h). Given the availability of such Court of Claims jurisdiction, this court found the absence of § 405(g) from the Medicare system an insufficient distinction between the two statutory

schemes to merit an interpretation of § 405(h) different from *Salfi.*

Plaintiffs argue that *MacDonald Foundation* cannot control this case. They maintain that this court must take jurisdiction despite the congressional bar in § 405(h) because there is no alternate forum available in the Court of Claims or elsewhere to adjudicate their claims. We disagree.

### III.

■ *MacDonald Foundation* controls the present appeal. The plaintiffs seek declaratory and injunctive relief on both the statutory and regulatory claims under the general jurisdictional grants of 28 U.S.C.A. §§ 1331(a) and 1346(a)(2).[5] The general grant of jurisdiction of the Court of Claims, 28 U.S.C.A. § 1491, authorizes that court to entertain damage actions against the United States. By that court's own determination, § 405(h) does not affect its authority under § 1491 to review Medicare disputes, in the absence of statutory review procedures, "at least so far as to ensure compliance with statutory and constitutional provisions." *Whitecliff, Inc. v. United States, supra,* 536 F.2d at 351.[6] Therefore, to the

---

4. The appellants attacked the Secretary's interpretation of the regulation, the validity of the regulation, and claimed that the decision to reduce reimbursements was an unconstitutional denial of substantive due process. The constitutional issue had not been raised until appeal; nevertheless, the court analyzed the preclusion of review issue in terms of all three claims.

5. Plaintiffs also seek mandamus against the Secretary under 28 U.S.C.A. § 1361 for his "clearly illegal act" of promulgating an allegedly invalid regulation. *American Association of Medical Staffs v. Califano,* 575 F.2d 1367 (5th Cir. 1978), in dicta, suggested that recasting challenges under the Medicare Act in terms of mandamus might avoid the jurisdictional problem of § 405(h). Other courts which have considered the effect of § 405(h) on jurisdiction invoked pursuant to 28 U.S.C.A. § 1361 are not in agreement. *See, e.g., Cervoni v. Secretary of HEW,* 581 F.2d 1010 (1st Cir. 1978); *Association of Am. Medical Colleges v. Califano,* 186 U.S.App.D.C. 270, 569 F.2d 101 (1977); *Elliott v. Weinberger,* 564 F.2d 1219 (9th Cir. 1977), *cert. granted,* 439 U.S. 816, 99 S.Ct. 75, 58 L.Ed.2d 106 (1978); *White v. Mathews,* 559

F.2d 852 (2d Cir. 1977), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978); *RoAne v. Mathews,* 538 F.2d 852 (9th Cir. 1976); *John Muir Mem. Hosp., Inc. v. Califano,* 457 F.Supp. 848 (N.D.Cal.1978). Since we find that the claim of error in the regulation can be reviewed in the Court of Claims, we need not express an opinion on the amenability of this issue to resolution by mandamus. *See generally Plekowski v. Ralston-Purina Co.,* 557 F.2d 1218 (5th Cir. 1977).

6. The Court of Claims has continued to adhere to *Whitecliff. Appalachian Regional Hospitals, Inc. v. United States,* 576 F.2d 858 (Ct.Cl.1978); *Gosman v. United States,* 573 F.2d 31 (Ct.Cl. 1978); *St. Elizabeth Hospital v. United States,* 558 F.2d 8 (Ct.Cl.1977); *Overlook Nursing Home, Inc. v. United States,* 556 F.2d 500 (Ct. Cl.1977).

This court has no authority to alter that determination, and our interpretation of § 405(h) has no precedential value in the Court of Claims. *Dr. John T. MacDonald Foundation v. Califano,* 571 F.2d 328 (5th Cir.) (en banc), *cert. denied,* 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978); 28 U.S.C.A. §§ 1255, 1291. Fur-

extent that plaintiffs' claims are cognizable under § 1491, *MacDonald Foundation* governs this appeal.

Section 1491 does not authorize the Court of Claims to grant the declaratory relief sought in this suit. *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *United States v. King,* 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). This does not change the result. We are concerned not with whether plaintiffs can receive the precise relief requested but whether the issues raised can be heard. In *American Association of Medical Staffs v. Califano,* 575 F.2d 1367 (5th Cir. 1978), this court was confronted with a similar request for declaratory and injunctive relief in constitutional and statutory claims against regulations promulgated under the Medicare Act. As in today's case, that particular suit could not be brought in the Court of Claims. That fact did not prevent this court from dismissing for lack of jurisdiction because "the *issue* raised by the plaintiff could be heard by [the Court of Claims] if [the plaintiff] can state a claim for damages or at least for nominal damages." 575 F.2d at 1373. *Medical Staffs* concluded that the due process claim could support a request for nominal damages and that the allegations suggested the existence of actual damages.

Plaintiffs' challenge to the questioned regulation, 42 C.F.R. § 405.232c, can easily be recast to assert their patients' Medicare rights as assignees to reimbursement for optometric services rendered.[7] Because

Court of Claims jurisdiction is available, total preclusion of judicial review does not result from the congressional decision to restrict district court jurisdiction.

## IV.

It is argued that neither *MacDonald Foundation* nor *Medical Staffs* apply to define our jurisdiction over the issue in which plaintiffs challenge the statute's constitutionality. Plaintiffs contend that, since the equal protection challenge to § 1395x(r) involves no Secretarial act, regulation, or decision, the claim is not one "arising under" the Medicare Act and thus the plain language of § 405(h) renders its jurisdictional limitation inapplicable. While this exact issue was not addressed by the court in *MacDonald Foundation* or *Medical Staffs,*[8] the argument was expressly rejected by the *Salfi* Court which found that a constitutional challenge to a statutory classification defining Social Security beneficiaries was a "claim arising under" the Act and was barred from direct judicial scrutiny by § 405(h). *Accord, Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Despite the fact that the main challenge sought to invoke constitutional rights rather than the Secretary's actions under the statutory scheme, the Court reasoned that it was one "arising under" the Act because the answer to the constitutional question would determine whether or not benefits were to be awarded.[9] In the same manner, a resolu-

---

theremore, there is some question whether § 1491 is included in "section 41 of Title 28," barred by § 405(h). *South Windsor Convalescent Home, Inc. v. Mathews,* 541 F.2d 910 (2d Cir. 1976).

**7.** Beneficiaries can either pay for covered services and request reimbursement directly from the program or they can assign their right to reimbursement to the physician. 42 U.S.C.A. § 1395u(b)(3)(B)(i), (ii). Thus, plaintiffs would be able to assert actual losses although they are not direct beneficiaries.

**8.** *Medical Staffs* involved a challenge to a regulation promulgated by the Secretary. The plaintiffs here contend that such a Secretarial function amounted to a "decision." In *Medical*

*Staffs,* however, we refused to distinguish *Mac-Donald*—a case based on a decision denying reimbursement—because of "the fact that no administrative hearing or decision was involved in the instant case." 575 F.2d at 1372. *See also Alabama Hospital Ass'n v. Califano,* 587 F.2d 762 (5th Cir. 1979).

**9.** Some courts have held that due process challenges to the procedures employed by the agency are collateral to reimbursement disputes and that *Salfi* and § 405(h) do not bar review in that context. *Humana of South Carolina, Inc. v. Califano,* 191 U.S.App.D.C. 368, 590 F.2d 1070 (1978); *Trinity Memorial Hosp. v. Assoc. Hosp. Service,* 570 F.2d 660 (7th Cir. 1977); *Elliott v. Weinberger,* 564 F.2d 1219 (9th Cir. 1977); *St.*

tion of the constitutionality of § 1395x(r) here would determine the expenditure of Medicare funds.

A more critical distinction is raised by plaintiffs' argument that the equal protection claim could never result in a damage award if successful and therefore could not be drafted so as to invoke Court of Claims jurisdiction under § 1491. Unlike the alleged due process violation in *Medical Staffs,* an equal protection claim, plaintiffs argue, cannot exact nominal damages. Even so, they say, any damage award would be barred by sovereign immunity.

■ The gist of plaintiffs' constitutional claim is that the congressional decision to allocate Medicare funds by classifying the type of "physician" who renders the service is irrational because it fails to account for overlaps of services performed by different classes of doctors. Plaintiffs agree, however, that the classification is constitutional if it is rationally related to furthering a legitimate state interest.

> This inquiry employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary. . . .
> Such action by the legislature is presumed to be valid.

*Massachusetts Board of Retirement v. Mungra,* 427 U.S. 307, 314, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976); *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1976). Our power to overturn a statute, where fundamental interests or suspect groups are absent, is limited to the situation in which "the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational. *Barry v. Barchi,* —— U.S. ——, ——, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979) *quoting, Vance v. Bradley,* —— U.S. ——, ——, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979). Accordingly, plaintiffs would raise a substantial constitutional claim only if they could show that Congress, in distinguishing between the diagnostic services provided by optometrists and doctors of medicine for the purposes of Medicare reimbursement, acted irrationally. *Rastetter v. Weinberger,* 379 F.Supp. 170, 173 (D.Ariz.1974), *aff'd,* 419 U.S. 1098, 95 S.Ct. 767, 42 L.Ed.2d 795 (1975).

■ Before enacting the Social Security amendments of 1967, Congress requested the Secretary of Health, Education and Welfare to conduct a study of the desirability of extending the use of Part B Medicare funds for services of additional types of licensed health practitioners. With the help of input from the affected health professions, the Secretary's comprehensive study concluded with a recommendation that, although there may be some overlap of diagnostic procedures of optometrists and ophthalmologists, their training was sufficiently different to indicate that the funds of the Part B program could best be used by limiting reimbursement to optometrists. HEW, Independent Practitioners Under Medicare: A Report to the Congress, at

Louis Univ. v. Blue Cross Hosp. Serv., 537 F.2d 283 (8th Cir.), *cert. denied,* 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584 (1976); *Ryan v. Shea,* 525 F.2d 268 (10th Cir. 1975); *Schwartzberg v. Califano,* 453 F.Supp. 1042 (S.D.N.Y.1978). Other courts, not presented with this precise question, have applied § 405(h) broadly. *Rhode Island Hospital v. Califano,* 585 F.2d 1153 (1st Cir. 1978); *Cervoni v. Secretary of HEW,* 581 F.2d 1010 (1st Cir. 1978); *Association of Am. Medical Colleges v. Califano,* 186 U.S.App. D.C. 270, 569 F.2d 101 (1977); *Moody Nursing Home v. Califano,* 578 F.2d 1158 (5th Cir. 1978); *South Windsor Convalescent Home, Inc. v. Mathews,* 541 F.2d 910 (2d Cir. 1976); *Kechijian v. Califano,* 458 F.Supp. 159 (D.R.I.

1978); *St. Elizabeth Hospital v. Califano,* 441 F.Supp. 158 (E.D.Ky.1977). *But see, Florida Medical Ass'n v. Department of HEW,* 454 F.Supp. 326 (M.D.Fla.1978); *Mid-Atlantic Nephrology Center, Ltd. v. Califano,* 433 F.Supp. 23 (D.Md.1977). This circuit, however, has not made the distinction. *Alabama Hospital Ass'n v. Califano,* 587 F.2d 762 (5th Cir. 1979). *Accord, John Muir Mem. Hosp., Inc. v. Califano,* 457 F.Supp. 848 (N.D.Cal.1978). The Supreme Court applied *Salfi* to a procedural due process claim for a Social Security pretermination hearing in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1978). Since review was available under § 405(g), there was no discussion of the limits of § 405(h).

114–22 (1968). In the face of this conscientious effort to maximize Medicare's coverage for the various healing professions, it cannot be said that Congress acted irrationally in providing reimbursement distinctions between the diagnostic services provided by a medical doctor and those provided by an optometrist. The failure to provide equal benefits to every conceivable interest in enacting reform legislation does not violate the equal protection clause. *Rastetter v. Weinberger, supra,* 379 F.Supp. 170. Plaintiffs' constitutional issue is clearly an insubstantial one. This being true, we need not rule on the converse—whether in the presence of a substantial constitutional claim, jurisdiction will lie under § 1331. *Cervoni v. Secretary of HEW,* 581 F.2d 1010 (1st Cir. 1978); *Kechijian v. Califano,* 458 F.Supp. 159 (D.R.I.1978).[10]

Congress, the source of inferior federal court jurisdiction, has opted to restrict our ability to consider claims arising under the Medicare Act. Finding that the only claim meriting judicial consideration can be decided in the Court of Claims, we dismiss for lack of jurisdiction.

DISMISSED.

---

**10.** Plaintiffs argue that we should require a hearing in the district court to develop the constitutional issue. But they have asserted no fact which, if assumed true, would lend substance to their claim.