**Morry S. FOX, Plaintiff,**

**v.**

**Patricia Roberts HARRIS et al., Defendants.**

**Civ. A. No. 79–2117.**

United States District Court, District of Columbia.

April 25, 1980.

Robert H. Neuman; Stephen L. Gibson, Reed L. von Maur, Washington, D. C., for plaintiff.

Edith S. Marshall, Sp. Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

GESELL, District Judge.

Plaintiff, an osteopathic physician, operated a medical clinic in Miami, delivering a range of health services *inter alia* to Part B Medicare beneficiaries.[1] By this complaint he seeks close to two million dollars from the Department of Health, Education and Welfare ("HEW") and its insurance carrier and agent, Blue Shield of Florida ("Blue Shield"), as compensation for services performed. Fox contends that he has been the victim of unlawful suspensions, reductions and withholdings of payments due under Part B. Further, he alleges a conspiracy to deprive him of constitutional rights among Blue Shield and several HEW officials sued in their individual capacities, for which he claims an additional one million dollars in punitive damages. Defendants have moved to dismiss on a variety of jurisdictional and other procedural grounds, and plaintiff has cross-moved for summary judgment as to the largest of his several compensatory damage counts. The motions have been thoroughly briefed and argued.

---

1. Medicare is a federal health insurance program enacted in 1965 as Title XVIII of the Social Security Act, Pub.L.No. 89–97, 79 Stat. 291, codified at 42 U.S.C. §§ 1395–1395rr (1976 & Supp. II 1978). The program provides a range of health services to elderly and disabled persons. Its health insurance scheme features Part A benefits (inpatient hospitalization and certain specified post-hospital services) and Part B benefits (supplementary medical and other health services, including physician services and diagnostic tests). *See* 42 U.S.C. §§ 1395c–1395i; 1395j–1395w. This action concerns only claims tendered under Part B of the program.

Through his clinic, Fox engaged in a high volume Medicare practice since the 1966 advent of that federal health insurance program. After furnishing covered services to eligible beneficiaries in his role of participating physician, he was assigned the right to collect reimbursement for such services, pursuant to applicable provisions of the Medicare statute, 42 U.S.C. § 1395u(b)(3)(B)(ii) (1976). He identifies six sets of circumstances in which his various claims for reimbursement have been dishonored.

Primary among these, in terms of the amount at stake, is a claim for payment due in the amount of $890,399, representing compensation for previously unprocessed claims, on which Fox seeks summary judgment. The origin of this claim is not disputed. HEW and its carrier, Blue Shield,[2] suspended processing and payment of some 11,000 claims submitted by plaintiff or physicians employed at his clinic between 1969 and 1974. Following three years of negotiations and the review of a small number of the claims, selected pursuant to an agreed sampling technique, plaintiff and HEW arrived at a form of resolution calling for issuance of $890,399 in full payment of the unprocessed claims. Defendants refer to this resolution, reached in late 1977, as a tentative agreement, while plaintiff calls it an "initial determination," final and irrevocable under the controlling regulations.[3] Although a check was drawn up in the agreed amount, it was never issued and the arrangement was repudiated. Plaintiff argues that once agreement had been reached and the check written, defendants' duty to pay was purely ministerial. Defendants contend that further discretionary judgment was exercised prior to actual pay-

ment, and that, in any event, plaintiff subsequently acquiesced in administrative remedies, thus abrogating any possibility of recourse to the mandamus relief sought here by summary judgment.

Plaintiff's other claims for unreimbursed services involve a complex assortment of agency transactions which the Court accepts as validly characterized for purposes of defendants' motion to dismiss. Fox challenges Blue Shield's recoupment of over $500,000 that was wrongfully identified as "overpayment," and excepts to the carrier's disallowance of all claims for EKG services over a six-year period, and to its across-the-board payment reduction of 57 percent, imposed unilaterally in September, 1972. In addition, Fox seeks payment for unrecompensed services performed by Dr. Hill and Dr. Gateman of his clinic, who had previously assigned to plaintiff the full extent of their claims against Blue Shield.

The motion to dismiss focuses on the Court's alleged lack of jurisdiction to resolve these various matters. It is argued that the Court lacks subject matter jurisdiction to hear plaintiff's claims for reimbursement against HEW and Blue Shield,[4] and that personal jurisdiction does not lie with respect to the civil rights and constitutional violations asserted against defendants in their individual capacities. Resolution of these arguments determines whether or not the Court need reach any of plaintiff's substantive demands for relief.

I.

■■■ The Court first turns to counts eight and nine of the complaint, which allege civil rights offenses. In his claims against the three individual defendants and

---

2. Under 42 U.S.C. § 1395u(a) (1976), the Secretary is authorized to contract with private "carriers" in order to administer the Part B medical insurance program on behalf of beneficiaries or physicians to whom a beneficiary has assigned his claim for payment.

3. See 42 C.F.R. §§ 405.803 .806 (1979).

4. These compensatory claims are contained in counts one and three through seven. Count two, seeking to enjoin the new peer review procedure being applied to the unprocessed claims at issue in count one, is based on the same jurisdictional provisions as the reimbursement claims. Plaintiff moved unsuccessfully for a preliminary injunction when he originally filed suit in August, 1979. Since that time, there has been no further motion for injunctive relief, and the peer review has continued. See discussion at page 6 and note 13 infra.

against Blue Shield in its individual capacity, plaintiff presumes that proper venue and service of process are established under 28 U.S.C. § 1391(e) (1976).[5] After *Stafford v. Briggs,* —— U.S. ——, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980), this is no longer the case. The liberal venue provisions of section 1391(e) do not govern damages actions brought against federal officials or agents in their individual capacities. *Id.* Service of process on the three individual defendants, which was accomplished by registered mail pursuant to § 1391(e), is therefore ineffective. Attempted service of process on a national Blue Cross/Blue Shield official in his Washington, D. C., office also is invalid as to defendant Blue Shield of Florida. Moreover, since the alleged offenses did not arise in the District of Columbia, and none of the individual defendants resides here, proper venue in this district cannot be established. 28 U.S.C. § 1391(b). Because the Court lacks jurisdiction over these defendants in connection with alleged improprieties committed outside their official capacities, the claims must be dismissed as to them. Accordingly, counts eight and nine are dismissed without prejudice to their being filed in a court of appropriate jurisdiction.

## II.

■ Plaintiff's effort in count one of the complaint to compel payment on unprocessed claims amounting to $890,399, relies on the applicability of 28 U.S.C. § 1361 (1976). Mandamus is an extraordinary remedy, appropriate only in cases of clearly arbitrary and illegal official action when no alternative judicial or administrative relief is available. *Association of American Medical Colleges v. Califano,* 569 F.2d 101, 110–

11 n. 80 (D.C.Cir.1977); *Haneke v. Secretary of HEW,* 535 F.2d 1291, 1296 n. 15 (D.C.Cir.1976). Plaintiff's grievance fails to qualify under those extreme requirements. The proposed release and the escrow agreement, both drawn up in December, 1977, to support the payment of $890,399, represent the near culmination of a protracted and unusual if not unique negotiating process. To characterize the arrangement as an ordinary "initial determination" under the Medicare regulations belies the actual course of events. Moreover, the ultimate processing and payment by the Government of this large negotiated claim implicates more than mere clerical or ministerial duties as the Secretary's subsequent refusal to approve demonstrates. Serious questions were raised regarding the sampling methodology, the neutrality of the peer review committee, and the adequacy of underlying documentation.[6] Without expressing any view as to the merit of these reservations, the Court finds they were predicated on a permissible exercise of discretion as to whether or not the treatment provided was "medically necessary" under the Medicare Act. *See* 42 U.S.C. § 1395y(a)(1) (1976).

■ Finally, and of critical importance in light of the jurisdictional provision invoked here, alternative relief is plainly available. Plaintiff essentially alleges the formation of a bilateral executory contract whereby the United States agreed to pay him $890,399 in exchange for his promise to waive all other claims arising out of the relevant five-year period. A lawsuit seeking to enforce such an alleged agreement, while foreclosed in this Court,[7] can be brought in the Court of Claims, 28 U.S.C. § 1491 (1976). Further, an admittedly be-

---

5. Under the venue requirements of this statutory section:

 a civil action in which each defendant is an officer or employee of the United States or an agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, may, except as otherwise provided by law, be brought in any judicial district in which: (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) the plaintiff resides if

no real property is involved in the action.
. . . .

6. *See, e. g.,* Memorandum from Office of General Counsel of HEW to Mildred Tyssowski, Acting Director, Medicare Bureau, Nov. 1, 1978, attached to plaintiff's memorandum in support of his opposition to defendants' motion to dismiss, March 28, 1980.

7. *See* discussion in Part III *infra.*

lated administrative review with respect to the 11,000 claims is in progress at the present time. Plaintiff has accepted over $340,000 as partial payment for these unreimbursed claims. He may well receive additional sums as part of the ongoing review process. To allow mandamus now would in effect circumvent the review procedures provided for by statute and regulation. There is no justification for such action, and, in the present context, no jurisdiction.[8] Similarly, no basis exists for entertaining the claim to enjoin administrative review in which plaintiff has participated and which is apparently nearing completion. There simply is no case or controversy.

### III.

Plaintiff asserts two other bases for this Court's jurisdiction to review his monetary claims against HEW and Blue Shield as its agent performing in an official capacity.[9] These assertions, however, must be viewed against the restrictive provisions of the Medicare Act that govern this Court's authority to review physician claims for reimbursement under Part B of the Medicare program. The Act nowhere provides for judicial review of decisions regarding benefit amounts due under Part B. *See Drennan v. Harris*, 606 F.2d 846, 849 (9th

Cir. 1979); *Cervoni v. Secretary of HEW*, 581 F.2d 1010, 1015 (1st Cir. 1978).[10] Moreover, the Act incorporates section 205(h) of the Social Security Act, 42 U.S.C. § 405(h),[11] precluding judicial review of such decisions under the general federal question jurisdiction of 28 U.S.C. § 1331. *See* 42 U.S.C. § 1395ii (1976). Section 205(h) establishes a jurisdictional bar to a beneficiary's constitutional claims as well as his challenge to the merits of the agency's determination. *Weinberger v. Salfi*, 422 U.S. 749, 760· 62, 95 S.Ct. 2457, 2464–65, 45 L.Ed.2d 522 (1975). *See Humana of South Carolina, Inc. v. Califano*, 590 F.2d 1070 (D.C.Cir.1978) ("*Humana*"); *Association of American Medical Colleges v. Califano*, 569 F.2d 101 (D.C.Cir. 1977). Thus it would appear that jurisdiction is not available under 28 U.S.C. § 1331 for any aspect of plaintiff's claims in counts one and three through seven. Access also is foreclosed under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*, which provides no independent basis for this Court's jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977).

Plaintiff suggests that special problems arise in applying the restrictive rule of *Weinberger v. Salfi, supra* to administrative determinations reached under Part B of the

---

8. The presence of an alternative administrative remedy, which has already resulted in a changed factual situation, makes it unnecessary to decide whether or not 42 U.S.C. § 405(h) precludes mandamus jurisdiction altogether. *See Association of American Medical Colleges v. Califano, supra*, 569 F.2d at 110 12.

9. 28 U.S.C. § 1331 (1976), 5 U.S.C. § 702 (1976).

10. The act provides for judicial review only in certain enumerated circumstances, not applicable in this instance. *See* 42 U.S.C. §§ 1395*oo* (f), 1395ff(b)(1)(C), 1395pp(d) (1976) (controversies involving Part A providers); 42 U.S.C. § 1395ff(b)(1)(B) (1976) (controversies involving eligibility of individual applicants for Part B benefits). Administrative review is available under the Act when a carrier has denied a Part B beneficiary's claim for reimbursement. The patient, or his physician assignee, has a right to an "informal review determination" followed by a "fair hearing," both conducted by the

carrier. 42 C.F.R. §§ 405.801(a), 405.807· .812, 405.820 .835 (1979).

11. This jurisdictional limitation, made applicable to actions arising under the Medicare statute, provides as follows:

> The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 of Title 28 to recover on any claim arising under this subchapter.

When section 205 was enacted in 1935, Section 41 of Title 28 contained virtually all grants of jurisdiction to United States district courts, including sections 1331 to 1348 of the current Title 28.

Medicare Act.[12] Because plaintiff allegedly seeks to protect his right to procedural regularity, and in so doing raises issues of constitutional due process, it is urged that he must not be denied his day in court. To foreclose all judicial review of such primarily procedural or constitutional claims would presumably raise a serious question as to the constitutionality of the statute itself. *See Weinberger v. Salfi, supra,* 422 U.S. at 762, 95 S.Ct. at 2465; *Johnson v. Robison,* 415 U.S. 361, 366–67, 94 S.Ct. 1160, 1165, 39 L.Ed.2d 389 (1974). *See also Humana, supra,* 591 F.2d at 1080–81.

Artful pleading by plaintiff, however, cannot transform claims for increased monetary reimbursement into a constitutional complaint to vindicate correct administrative procedures. Unlike the challenge to agency rulemaking regularity in *Humana,* these claims against HEW and its carrier plainly attack the levels of permissible cost-reimbursement determined by the agency. In no way should they be characterized as purely or even primarily procedural. No issue is raised as to the constitutionality of the underlying statutory or regulatory provisions. Plaintiff's fundamental grievance is instead financial and contractual. He maintains that he has not been paid what he is owed under numerous reimbursement agreements for medically necessary services rendered at a reasonable charge. The agency contends to the contrary, arguing that it has properly applied the relevant statutory standards to the facts and circumstances of plaintiff's case. Preclusion of District Court review, which Congress explicitly intended, simply does not rise to the level of a constitutional dilemma in this instance. *See generally Johnson v. Robison, supra,* 415 U.S. at 367, 94 S.Ct. at 1165.

 There is a further reason to eschew characterization of plaintiff's claims as constitutional. If plaintiff truly sought to vindicate his right to due process of law, his appropriate remedy would be procedural. Yet rather than pressing for adequate notice, a fair hearing, or some other form of procedural protection, plaintiff asserts directly his right to specified reimbursable amounts. What is at stake in reality here is not the right to a panoply of administrative procedures. Indeed with respect to at least some of his claims plaintiff retains access to or is actively employing procedural channels that may afford him the monetary relief he seeks.[13] By alleging an unconstitutional deprivation of his property interest, plaintiff would have this Court assume or adjudicate the existence of such a property interest when to do so amounts to a decision on the merits of the underlying reimbursement claims. This the Court cannot do.

Stringent standards must be satisfied before a Court may treat an alleged federal claim as implausible or insubstantial for jurisdictional purposes. *Hagans v. Lavine,* 415 U.S. 528, 536–37, 94 S.Ct. 1372, 1378–79, 39 L.Ed.2d 577 (1974); *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946); *Payne v. Government of Dist. of Columbia,* 559 F.2d 809 (D.C.Cir.1977). It is clear, however, that Congress expressly intended to deny this Court authority to review statutory claims for Part B Medicare reimbursement. A legislative intent to preclude judicial review of genuine constitu-

---

**12.** The Supreme Court in *Salfi* recognized that judicial review of the constitutional issues raised therein was available under 42 U.S.C. § 405(g), a section of the Social Security Act which with limited exception has not been incorporated into the Medicare statutory scheme. Similarly, constitutional questions raised in the course of a Part A controversy may be subject to judicial review following submission to the Provider Reimbursement Review Board, 42 U.S.C. § 1395oo (f)(1). This Board does not review controversies arising under Part B.

**13.** For an account of the ongoing agency review of claims under count one, *see* Affidavit of

John D. Wachtel, Jan. 18, 1980, attached to defendants' memorandum in opposition to plaintiff's motion for summary judgment, Jan. 31, 1980. Claims under count seven apparently also continue to be administratively processed and determined. Plaintiff's right to a fair hearing persists on the claims subsumed in counts three, four and five if, as he maintains, he never received notice of the initial adverse determinations. Alternatively, the time for informal review and fair hearing on these claims may be extended by the carrier upon request by the affected party. 42 C.F.R. §§ 405.807(c), 405.-820(d) (1979).

tional issues should not lightly be inferred, and the Court sees no such intent here. Nevertheless, where the "constitutional" issues lack any foundation and are advanced for the ulterior purpose of evading clear congressional objectives, they must be rejected as insubstantial.

The relief sought here is not procedural. Administrative procedures, the constitutionality of which is unquestioned, continue to be available and are in process. To grant jurisdiction for this purely monetary dispute involving only official government action would encourage Fifth Amendment claims whenever the reimbursement process yields less than optimal results for beneficiaries or their assignees. Under these circumstances, the Courts would soon be performing a function. Congress not only did not intend but expressly wished to avoid.

Denial of jurisdiction, in any event, raises no constitutional difficulties so long as another judicial forum to hear plaintiff's claims is available. *See Pushkin v. Califano,* 600 F.2d 486, 490 (5th Cir. 1979). Even if the complaint is presumed to have raised genuine constitutional questions, section 205(h) and the relevant provisions of the Medicare Act by their terms apply only to foreclose or limit jurisdiction in the District Courts.[14] The general grant of jurisdiction of the Court of Claims, 28 U.S.C. § 1491, confers jurisdiction on that court to review damages actions brought against the United States on the basis of a contractual, statutory or constitutional provision. Because this action is grounded in plaintiff's contractual arrangements with the government or its agent, and because the Act requires appropriate payment to participating physicians who are assignees for purposes of reimbursement, there is a substantive right enforceable against the United States. *Cf. United States v. Testan,* 424

U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976).

The Court of Claims has determined that by incorporating § 205(h) Congress did not intend to affect its authority to review Medicare cost reimbursement disputes under 28 U.S.C. § 1491, at least when judicial review "to ensure compliance with statutory and constitutional provisions" is not otherwise available. *Whitecliff, Inc. v. United States,* 536 F.2d 347, 351, 210 Ct.Cl. 53 (1976), *cert. denied* 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977). *See Appalachian Regional Hospitals, Inc. v. United States,* 576 F.2d 858, 862 (Ct.Cl.1978); *Overlook Nursing Home, Inc. v. United States,* 556 F.2d 500, 502 (Ct.Cl.1977). Numerous Circuit Courts of Appeal have adopted this approach, holding that Medicare benefits actions which raise constitutional questions should be adjudicated in the Court of Claims. *See, e. g., Dr. John T. McDonald Foundation, Inc. v. Califano,* 571 F.2d 328 (5th Cir.), *cert. denied* 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978); *Trinity Memorial Hospital v. Associated Hospital Services, Inc.,* 570 F.2d 660 (7th Cir. 1977); *South Windsor Convalescent Home, Inc. v. Mathews,* 541 F.2d 910 (2d Cir. 1976). Although many of these actions are brought by "providers of services"[15] under Part A of the Medicare program, actions brought in District Court by participating physicians under Part B have been similarly analyzed. *See, e. g., Drennan v. Harris,* 606 F.2d 846 (9th Cir. 1979); *Pushkin v. Califano,* 600 F.2d 486 (5th Cir. 1979).

For all of the above-mentioned reasons, plaintiff has failed to establish that this case should go forward. Accordingly, plaintiff's motion for summary judgment is denied. Defendants' motion to dismiss is granted, and the case is dismissed.[16]

So ordered.

---

14. The former section 41 of Title 28 concerns only District Court jurisdiction. *See* note 11 *supra.* The substantive provisions in the Medicare statute itself also address review by the District Courts. *See* note 10 *supra.*

15. *See* 42 U.S.C. § 1395x(u) (1976) ("provider of services" defined as hospital, skilled nursing

facility or home health agency; plaintiff does not so qualify).

16. In light of this disposition the Court does not consider defendants' further arguments concerning the absence of a constitutional cause of action, absolute immunity, and the running of the statute of limitations.