In the Matter of CLAWSON MEDICAL, REHABILITATION AND PAIN CARE CENTER, P.C., a Michigan Professional Corporation, Debtor.

Alexander G. ANDREWS, Trustee

v.

BLUE CROSS AND BLUE SHIELD OF MICHIGAN and Patricia Harris, Secretary of the Department of Health and Human Services.

Bankruptcy No. 80–05705–P.

United States Bankruptcy Court,
E. D. Michigan, S. D.

Feb. 18, 1981.

Honigman, Miller, Schwartz & Cohn by Sheldon S. Toll, Detroit, Mich., for trustee.

August, Thompson, Sherr, Clarke, Schafer & Shefman, P.C. by Irving A. August and Diane Ash, Birmingham, Mich., for debtor; Frimet, Bellamy, Gilchrist & Jehle, P.C. by Gilbert M. Frimet and Andrew B. Wachler, Southfield, Mich., of counsel.

Ralph D. Gilpin, Detroit, Mich., for Blue Cross and Blue Shield of Michigan.

Karl Overman, Asst. U. S. Atty., Detroit, Mich., for the Department of Health and Human Services.

## OPINION

DAVID H. PATTON, Bankruptcy Judge.

On October 7, 1980 Clawson Medical, Rehabilitation and Pain Care Center, P.C. filed a petition for reorganization under Chapter 11 of the newly revised Title 11, United States Code, thereby commencing a case before this Court.[1] A Trustee was appointed and authorized to continue the operation of the debtor's business.

---

1. 11 U.S.C. § 301 enacted as part of the Bankruptcy Reform Act of 1978, Public Law 95–598, 92 Stat. 2549, (the "Reform Act").

The matter presently before the Court arises from a request by the Trustee that Blue Cross and Blue Shield of Michigan (B.C.B.S.) and the Secretary of the Department of Health and Human Services (H.H.S.) be ordered to discontinue certain practices which the Trustee alleges have decreased Medicare reimbursement payments to the debtor. That request has been vigorously opposed by both B.C.B.S. and H.H.S. on the merits and on procedural grounds. A motion filed by those entities requests dismissal on jurisdictional grounds under Civil Procedure Rule 12(b)(1) and will be treated as part of this proceeding. This memorandum contains the findings of fact and conclusions of law necessary to resolution of the issues presented.

## FACTUAL BACKGROUND

With the exception that the Medical Center is a debtor under Title 11, the factual context of this dispute is one which is becoming increasingly familiar to the courts. The debtor is a medical facility certified to provide services under the provisions of the Social Security Act referred to as Medicare.[2] As a certified Medicare provider it has, since beginning operations in 1978, provided services, consisting mainly of outpatient physical therapy treatments, to patients in its service area. Approximately eighty-five percent of these patients are Medicare beneficiaries and as a result a preponderance of the revenue derived from the Medical Center's operations consists of payments for costs reimbursable under Medicare programs.[3]

B.C.B.S. acts as the fiscal intermediary between the Medical Center and H.H.S. As part of this relationship it is responsible for the initial processing and review of claims for cost reimbursement submitted by the Medical Center. It is also responsible for making payments to the Medical Center for claims which are approved for reimbursement.[4]

The relief sought by the Trustee in this proceeding is an order restraining B.C.B.S. from certain actions which he alleges have reduced the debtor's revenues below levels at which its business can be operated. The actions complained of take two basic forms. As presented, it appears that B.C.B.S. has changed its review procedures and standards with the result that a substantially greater percentage of the claims for cost reimbursement submitted by the debtor are rejected at initial stages of the B.C.B.S. processing/reviewing process. These rejections, combined with delays in the secondary stages of the reviewing procedure, have produced a huge backlog of unpaid claims representing several hundred thousand dollars in potential revenue for the debtor's business. In addition, B.C.B.S. has substantially reduced the per treatment rate at which interim compensation payments to the Medical Center are calculated.[5] These actions have caused a substantial reduction in the amount paid by B.C.B.S. to the debtor as reimbursement for services performed for Medicare beneficiaries.

This reduction is not disputed by either B.C.B.S. or H.H.S. Their position is that their actions are authorized and in most instances required by the Medicare Act and

---

**2.** Subchapter XVIII, 42 U.S.C. § 1395 et seq. The debtor's status is somewhat unique in that it is certified under Part A of that subchapter but provides services under Part B, 42 U.S.C. § 1395j–w. Although the services provided are outpatient physical therapy services the Medical Center is apparently paid as though the services were furnished under Part A. See 42 U.S.C. §§ 1395x(p) and 1395*l*(a)(2)(C). For a thorough discussion of payment under Part A see *Monmouth Medical Center v. Harris*, 494 F.Supp. 590 (D.N.J.1980).

**3.** The Medicare statutory scheme contemplates that providers of services will render services

to Medicare beneficiaries and subsequently be reimbursed for reasonable costs attributable to such services. See 42 U.S.C. § 1395f(b), (g), and 42 C.F.R. §§ 405.405, 405.454.

**4.** Such delegation by H.H.S. is authorized under 42 U.S.C. § 1395h and appears to be a prevalent practice in the administration of health programs funded under Medicare.

**5.** The rate paid for individual treatment modalities had at one point been reduced from $17.00 to $4.70. At the time of the hearing in this matter it had been readjusted to $8.40.

applicable regulations. This position has been challenged by the debtor in an action presently pending before this Court following its removal from the District Court pursuant to 28 U.S.C. § 1478. The Trustee's request is that he be protected from the impact of the practices complained of until the dispute is resolved.

## JURISDICTION

Initially it must be determined whether this Court has subject matter jurisdiction. Resolution of this issue presents a question of first impression with regard to the scope of the jurisdictional provisions of the Reform Act, 28 U.S.C. § 1471.[6]

Section 1471 grants extensive jurisdiction of matters connected with cases under Title 11 to federal district courts and provides that such jurisdiction shall be exercised by the federal bankruptcy courts. 28 U.S.C. § 1471(b), (c); *Matter of Epps*, 2 B.R. 737, 2 C.B.C.2d 368, 370 (D.C.S.D.N.Y.1980). It also grants the bankruptcy court in which the Title 11 case is filed exclusive jurisdiction of the debtor's property. 28 U.S.C. § 1471(e).

Under this grant this Court has jurisdiction over all property of the debtor and over "civil proceedings arising under title 11 or arising in or related to cases under title 11." This proceeding seems clearly within the scope of such jurisdiction. It is initiated by a trustee whose appointment[7] and actions are regulated by the Code and by this Court as specified in the Code.[8] Its resolution will have a considerable impact on the Medical Center's estate and on its prospects for effecting a successful reorganization. Under the Code, all legal or equitable interests in property become part of the estate established at the commencement of the case. 11 U.S.C. § 541(a). This includes property held by other entities. Under certain conditions this Court can require turnover of such property for use in reorganizing the debtor and the operation of its business. 11 U.S.C. §§ 542, 543, 363. Determination of what, if anything, is owing to the Trustee is thus a crucial question in the administration and disposition of this case. A proceeding connected to a Title 11 case in this way relates to the case and can be heard in the bankruptcy court. 28 U.S.C. § 1471(b), (c).[9] *In re Griffith*, 6 B.R. 750, 2 C.B.C.2d 387 (Bkrtcy.D.N.M.1980).

**6.** That section provides: "(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11. (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11. (c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts. (d) Subsection (b) or (c) of this section does not prevent a district court or a bankruptcy court, in the interest of justice, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. Such abstention, or a decision not to abstain, is not reviewable by appeal or otherwise. (e) The bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all of the property, wherever located, of the debtor, as of the commencement of such case."

**7.** 11 U.S.C. § 1104.

**8.** See 11 U.S.C. §§ 1106, 1108.

**9.** This conclusion is mandated by the Legislative History of § 1471. It is further confirmed by Collier and other provisions of the Reform Act. In the Report of the House Judiciary Committee which accompanied the Reform Act, H.R.Rep.No.95–595, 95th Cong., 1st Sess. (1977) ("H.R."), U.S.Code Cong. & Admin. News 1978, p. 5787 § 1471(b) jurisdiction is described as encompassing proceedings and plenary actions under previous bankruptcy law. H.R. at 445. The report states, "Examples of matters that the bankruptcy court will be able to hear include all items listed by the Bankruptcy Commission in its proposed bill, H.R. 31, 94th Cong., 1st Sess., §§ 2–201(a), 2–201(b), (1975), or the equivalent of those items under Title 11 as proposed by H.R. 8200, as well as all items that the bankruptcy courts are now able to hear under Bankruptcy Act § 2(a)." Id., U.S.Code Cong. & Admin.News 1978, 6401. Among the matters listed in H.R. 31 are "controversies involving property of the estate of the debtor without regard to who has possession," § 2–201(a)(5), and "actions in which the Trustee ... is a party plaintiff or defendant." § 2–201(a)(9). See also Bankruptcy Act § 2(a)(15) and *In re Lustron Corp.*, 184 F.2d 789 (7th Cir. 1950).

■ Exercise of this jurisdiction is not barred by the incorporation of § 405(h) of the Social Security Act into the Medicare Act by 42 U.S.C. § 1395ii.[10] As construed in *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed. 522 (1975), § 405(h) bars federal district courts from exercising federal question jurisdiction in disputes to which it is applicable. It may also condition review under other statutes by requiring that nonjudicial statutory review mechanisms be utilized as a prerequisite to judicial review. *Whitecliff, Inc. v. U. S.*, 536 F.2d 347, 351 (Ct.Cl.1976), cert. denied, 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361; *Pacific Coast Medical Enterprises v. Harris*, 633 F.2d 123 (9th Cir. 1980).

However, no mention of § 1471 is made in the third sentence of § 405(h), which the Court in *Salfi* interpreted to bar jurisdiction. Such omission has been found to permit review under other sections of Title 28, *White v. Matthews*, 559 F.2d 852 (2nd Cir. 1977), *Whitecliff, Inc. v. U. S.*, supra, *Arkansas Society of Pathologists v. Harris*, CCH Medicare/Medicaid Guide, para. 30,706 (E.D.Ark.1980), *Fox v. Harris*, 488 F.Supp. 488 (D.D.C.1980),[11] and is indicative of Congressional intent not to preclude jurisdiction. The Reform Act extensively amended existing law but did not include § 1471 in § 405(h). Without such action, the best construction of § 405(h) seems to be that it does not bar § 1471 jurisdiction.

The exhaustion requirement embodied in the first two sentences of § 405(h) is similarly inapplicable. Jurisdiction to hear proceedings related to Title 11 cases is conferred "[N]otwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts..." This language is seen as authorizing bankruptcy court jurisdiction "irrespective of congressional statements to the contrary in the context of specialized legislation." 1 *Collier on Bankruptcy*, para. 3.01 (15th ed. 1979). The main check on jurisdiction was seen as abstention[12] and in the absence of "clear and convincing evidence" of legislative intent to preclude or condition this Court's jurisdiction, no further barriers will be erected. *Chelsea Community Hospital, SNF v. Michigan Blue Cross Association*, 630 F.2d 1131 (6th Cir. 1980); *Wayne State University v. Cleland*, 590 F.2d 627, 632 (6th Cir. 1980); *Johnson v. Robison*, 415 U.S. 361, 373, 94 S.Ct. 1160, 1168, 39 L.Ed.2d 389 (1974).[13]

Even without the prefatory language, an interpretation of § 405(h) as inapplicable to § 1471 is consonant with Congressional intent with regard to post-Code jurisdiction expressed in the legislative history. One of the primary purposes of revising the statutory grant of jurisdiction to the bankruptcy courts was the elimination of "frequent,

---

In discussing § 1471(b) jurisdiction Collier states that "jurisdiction will exist in the bankruptcy court to hear any matter which is related to or in any way connected with the Title 11 case." This matter satisfies the nexus and outcome tests proposed. 1 *Collier on Bankruptcy*, para. 3.01 (15th ed. 1979).

The bankruptcy court venue provisions in 28 U.S.C. § 1473 deal with venue in actions commenced by the trustee and clearly contemplate the hearing of this sort of action in bankruptcy courts. See 28 U.S.C. § 1473(c), (d).

**10.** Under § 1395ii the provisions of § 405(h) apply to the Medicare Act "to the same extent they are applicable under subchapter II of the Social Security Act."

**11.** And under § 1331 itself. *U. S. v. Aquavella*, 615 F.2d 12 (2nd Cir. 1979).

**12.** H.R. at 51, 466.

**13.** The role which Congress intended bankruptcy courts to play in the context of complex statutory enactments such as the Medicare provisions of the Social Security Act is indicated by the "notwithstanding" clause prefacing § 1471(b). It is further illustrated in the automatic stay provisions.

The filing of a petition under Title 11 automatically stays the commencement or continuation of proceedings against a debtor, including administrative proceeding. 11 U.S.C. § 362(a)(1). This stay and litigation regarding its effects and whether it should be continued will often involve bankruptcy courts in the administrative process. See, e. g., 11 U.S.C. § 362(d). In areas in which the automatic stay is not applicable, Congress contemplated that the court would make appropriate use of its powers when requested to do so by a trustee. H.R. at 342. See also 2 *Collier on Bankruptcy*, para. 362.02 (15th ed. 1979).

time-consuming and expensive litigation of the question whether the bankruptcy court has jurisdiction of a particular proceeding." H.R. at 45, U.S.Code Cong. & Admin.News 1978, p. 6007. In the Committee's view, "A comprehensive grant of jurisdiction to the bankruptcy courts over all controversies arising out of any bankruptcy or rehabilitation case would greatly diminish the basis for litigation of jurisdictional issues," a change which was "essential to a healthy bankruptcy system." H.R. at 46, 48, U.S. Code Cong. & Admin.News 1978, 6007.

■ In this proceeding the Trustee seeks a stay of certain actions until his rights are determined in the appropriate forum. To require him to complete the complex and time-consuming maze of the B.C.B.S. administrative review process as a prerequisite to obtaining such relief will virtually ignore the purpose of the changes in the jurisdictional grant enacted in the Reform Act—elimination of delay and expense as a barrier to a successful reorganization.[14] If a trustee requests protection from allegedly unlawful practices this Court must have jurisdiction to determine whether he should get it. The base for such jurisdiction is the amendment of Title 28 effected by the Reform Act.

■ The Secretary also urges abstention. While this Court has power to act in this manner under 28 U.S.C. § 1471(d) that power is to be exercised "in the interest of justice" and will not be exercised in this proceeding. While the right to abstain from hearing a particular matter provides an opportunity to curb abuses such as forum shopping or attempts to avoid lawful administrative regulation, such abuses are not evident in this case. By filing under Title 11, the Medical Center relinquished control of its property and affairs and assumed legal duties to provide information and cooperate with a court-appointed trustee. 11 U.S.C. § 521. The Trustee is accountable to this Court and interested parties. 11 U.S.C. §§ 1106, 704, 343, 521. His appointment, combined with the monitoring provisions of the Code, provides security against abuses of its provisions. In this case the Trustee has assumed control and assessed the debtor's financial condition prior to requesting relief. A request for a hearing in these circumstances should be rejected only where there are strong countervailing factors.[15] Such factors are not present in this case.

An additional consideration is the limited nature of the relief requested. Even if the Trustee obtains the stay he seeks, it must still be established that an action on the merits should be heard in this Court. If at that time it appears that another forum is more appropriate the powers to abstain and to remand can be exercised. The determination of whether the B.C.B.S. actions should be stayed is particularly appropriate for determination in this Court as it involves consideration of the debtor's prospects for rehabilitation. Recourse to administrative review will inevitably involve delay[16] and may result in nothing more than a determination that no relief is available.[17] In these circumstances the Trustee's

14. H.R. at 44, 45.

15. See, e. g., *In re Tidwell*, 4 B.R. 100, 2 C.B. C.2d 172, 173 (Bkrtcy.N.D.Tex.1980) (retention of jurisdiction would result in added expense and loss of time and entail application of same state law already applied in a state court proceeding); *Matter of Jewell Terrace Corp.*, 3 B.R. 36, 2 C.B.C.2d 581 (Bkrtcy.E.D.N.Y.1980) (deference to state court expertise in state law and lack of good faith in filing Title 11 petition to oust state court jurisdiction).

16. The amount of delay is a matter of dispute between the parties but it is clear from the evidence that it would be substantial, involving months and potentially years of hearings.

There is a growing backlog of pending claims and B.C.B.S. admits it has experienced problems allocating and training personnel to complete even the initial stages of its own reviewing procedures. The final step of the internal review process is conducted by a part-time contract employee who devotes two mornings per week to such duties. Similar delays have occasioned judicial action to hasten review and shield those seeking it. *White v. Matthews*, supra; *Caswell v. Califano*, 435 F.Supp. 127 (D.Me.1977).

17. Review rights of Part B beneficiaries and their assignees are disputed and the hybrid status of the Medical Center (see note 2, supra)

proceeding should be heard in this Court. 28 U.S.C. § 1471.

## INJUNCTIVE RELIEF

■ The relief which the Trustee requests is in the nature of an injunction. Under the Code this Court has power to grant injunctive relief under 11 U.S.C. § 105(a) and 28 U.S.C. § 1481. While it is as yet unclear what limits will apply to the exercise of this power by a bankruptcy court in a post-Code case, any exercise of powers granted is presumably subject to historic limitations on equitable powers and the Rules of Bankruptcy Procedure.

Pursuant to Rule 765 of the Bankruptcy Rules, Rule 65 of the Federal Rules of Civil Procedure applies in adversary proceedings.[18] Bankruptcy Rule 701[19] classifies a proceeding seeking injunctive relief from a bankruptcy court as an adversary proceeding. The Trustee's request must therefore be considered as a request to which F.R.C.P. 65 is applicable.[20]

■ The standard which must be met before an injunction to which F.R.C.P. 65 applies will be issued requires that the party requesting its issuance show that in the absence of such issuance he will suffer irreparable injury and that he is likely to prevail on the merits. *Doran v. Sabin Inn, Inc.*, 422 U.S. 922, 931, 95 S.Ct. 2561, 2567, 45 L.Ed.2d 648 (1975). *Garlock, Inc. v. United Seal, Inc.*, 404 F.2d 256 (6th Cir. 1968). Issuance of a preliminary injunction to preserve the status quo is appropriate "when the record shows that irreparable injury to the movant during the pendency of the action will likely impair the court's ability to render a meaningful decision on the merits. * * *" *Mt. Sinai Medical Center of Miami, Inc. v. Mathews*, 425 F.Supp. 5, 7 (S.D.Fla.1977). This is particularly true where the financial ability of the party to sustain economic viability during the course of the action is in doubt. *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 924 (6th Cir. 1978).

In this case the debtor and its creditors and employees will be harmed if the Medical Center ceases operations. The loss of goodwill and other elements of business value will reduce the estate available to satisfy claims in either reorganization or liquidation. The difficulties of reviving a business which is not in operation may result in a failed reorganization followed by liquidation. The Medical Center leases its treatment facilities and apparently has few capital assets. Liquidation will substantially reduce the amount realized by all claimants.

■ If the possibility of a reorganization is lost through actions taken by B.C.B.S. and the Secretary remedies available to the damaged groups after liquidation will afford little relief. Reorganization is a hoped for event, but its likelihood and the extent of recovery under any plan of reorganization which may ultimately be adopted is speculative at this time. Such losses will be

---

18. That Rule reads: "Rule 65 of the Federal Rules of Civil Procedure applies in adversary proceedings except that a temporary restraining order or preliminary injunction may be issued on application of a trustee, receiver, or bankrupt without compliance with subdivision (c) of that rule. When security is required under subdivision (c) of that rule and is given in the form of a bond or other undertaking, Rule 925 governs its enforcement against the surety thereon."

creates additional complications in determining the Trustee's rights as its statutory successor under 11 U.S.C. § 541. It may be that, as the Secretary contends, no other court can hear this matter at this time. See *Cervoni v. Secretary of Health, Education and Welfare*, 581 F.2d 1010, 1018 (1st Cir. 1978); *Kechijian v. Califano*, 458 F.Supp. 159 (D.R.I.1978); *Aristocrat South, Inc. v. Matthews*, 420 F.Supp. 23 (D.D.C.1976); *Federal Question Jurisdiction Over Medicare Provider Appeals After Weinberger v. Salfi: Toward a Principled Construction of the Statutory Bar*, 65 Va.L.Rev. 1383, 1386 (1979). But compare *Kechijian v. Califano*, 621 F.2d 1, 4 (1st Cir. 1980); *Hospital San Jorge, Inc. v. Secretary of H.E.W.*, 598 F.2d 684, 686 (1st Cir. 1979); *White v. Matthews*, supra.

19. Bankruptcy Rule 701(5) states: "The Rules of this Part VII govern any proceeding instituted by a party before a bankruptcy judge to . . . (5) obtain an injunction. Such a proceeding shall be known as an adversary proceeding."

20. Except for subpart (c). See Bankruptcy Rule 765, footnote 18, supra.

difficult if not impossible to recover in damages. It therefore appears that unless the debtor remains in operation, it and other interested parties will be irreparably harmed. *Detroit Newspaper Publishers Association v. Detroit Typographical Union No. 18*, 471 F.2d 872, 876 (6th Cir. 1972); *Danielson v. Local 275, Laborers International Union of North America, AFL–CIO*, 479 F.2d 1033, 1037 (2nd Cir. 1973); *Matter of W. T. Grant Co.*, 6 B.R. 762 (Bkrtcy.S.D. N.Y.1980).

Whether the claims presented will be upheld is a more difficult question. Reduced to essentials, the debtor's position, assumed by the Trustee with regard to post-petition claims, is that it has a legal right to timely payment of certain amounts and that actions of B.C.B.S. and the Secretary have violated that right. In view of the seemingly irregular status of the Medical Center among the ranks of Medicare providers, determination of its payment rights under the Medicare Act is difficult. It is also unclear whether those rights have been abridged by nonpayment,[21] procedural changes without proper notice and hearing [22] or otherwise.[23] What is clear is that the procedures and methods utilized by B.C.B.S. have proved unequal to the task of reviewing the claims in a timely fashion. This delay in processing, coupled with rate determination mechanisms which have resulted in dramatic variations in the debtor's Medicare reimbursement revenue, create the sort of "serious and substantial questions" indicating likelihood of success on the merits which justify temporary injunctive relief.[24] *Mt. Sinai Medical Center of Greater Miami, Inc. v.*

*Mathews*, supra, 425 F.Supp. at 12; *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 536–538 (6th Cir. 1978).

The Secretary argues that the benefit of the debtors continuation in operation is counterbalanced by a threat of losses to the government resulting from overpayments which cannot be recouped. Any such threat is minimized by two factors: (1) The duration of the injunctive order will be only until the Trustee obtains a hearing, unless it is extended at that time. (2) While it is in effect, if the Secretary or any other interested party claims an interest in what is paid to the Medical Center as a result, protection of that interest can be provided in accordance with the applicable Code provisions. 11 U.S.C. § 363, 361. In these circumstances, the relief requested by the Trustee will help preserve the debtor's estate and enhance its possibility of a successful reorganization by giving the Trustee a reasonable time to develop a plan. See 11 U.S.C. § 1106(5) and *In re Auto-Train Corp.*, 6 B.R. 510, 3 C.B.C.2d 239, 244 (Bkrtcy.D.D. C.1980). A preliminary injunction will also protect the debtor's patients and employees from having to seek other treatment facilities and jobs at a time when both are in short supply in this city, minimizing, and hopefully preventing any losses to them.

Neither H.H.S. nor B.C.B.S. has established that it will suffer damage in any way approximating such losses. The public interest is best served where a debtor filing under Chapter 11 is given an opportunity to realize what appears to be a reasonable possibility of effecting a successful reorga-

---

21. 42 U.S.C. § 1395pp, relied on by the Trustee, requires that payment be made under certain circumstances but only "to the extent permitted by this subchapter."

22. In *Chelsea Medical Center, SNF*, supra, the court found that due process concerns mandated a construction of § 405(h) which allowed judicial Review of a Part A provider's pre-1973 claims. Whether this decision is applicable to determine due process standards for the Medical Center's claims is an open question. Compare *Himmler v. Califano*, 611 F.2d 137 (6th Cir. 1979) with *Leduc v. Harris*, supra. See also, *Medicare Appeals Procedures: A Consti-*

*tutional Analysis*, 70 N.W.L.Rev. 139, 153, 164–167 (1975).

23. Determination of whether a colorable constitutional claim has been presented is not necessary at this time in view of the conclusion that this Court's jurisdiction is not dependent on the nature of the claim but on the connection of the proceeding to the Title 11 case.

24. This conclusion is further supported by evidence that review conferences which have taken place between Medical Center personnel and B.C.B.S. have resulted in approval of a high percentage of initially rejected claims.

nization. The main source of the Medical Center's financial distress is its dispute with B.C.B.S. Once this dispute is resolved it should be able to sustain its operations with the funding provided.[25] It appears that there is a good possibility it will find some vindication for its claims once they are presented in the proper forum. In view of these conclusions, the requirements for issuance of an injunction imposed by F.R.C.P. 65 are met and the relief requested by the Trustee can be granted. *Garlock v. United Seal, Inc.*, supra; *Pennwalt Corp. v. Zenith Laboratories*, 472 F.Supp. 413 (E.D.Mich. 1979); *Dow Chemical Co. v. Train*, 423 F.Supp. 1359 (E.D.Mich.1976).

### JUDICIAL POWER

The Trustee has requested that B.C.B.S. be prevented from applying an interim rate less than $17.00 per modality. The Secretary has attacked this request as an attempt to involve the Court in administrative functions in ways which will cause it to exceed its authority. While it is correct that enjoining the practices which have reduced reimbursement levels as the Trustee requests will affect the administrative process, characterization of what is requested as judicial rate-making, as the Secretary has done in his brief, indicates a reliance on form when what is important is substance.

The equitable power to tailor an injunction to the exigencies of a case has historically been exercised in affording relief under the bankruptcy statutes. *Steelman v. All Continent Corp.*, 301 U.S. 278, 290, 291, 57 S.Ct. 705, 710, 81 L.Ed. 1085 (1937); *In re Dolly Madison Industries, Inc.*, 504 F.2d 499 (3rd Cir. 1971); *Halpert v. Engine Air Service*, 212 F.2d 860 (2nd Cir. 1954); *In the Matter of Rosenbaum Grain Corp.*, 13 F.Supp. 601 (N.D.Ill.1935). See also 1 *Collier on Bankruptcy*, para. 2.62 (14th ed. 1977). Judicial powers of this sort are vested in bankruptcy courts by the Reform Act. 28 U.S.C. § 1481. *In re Parr*, 1

B.R. 453, 2 C.B.C.2d 199 (Bkrtcy.E.D.N.Y. 1979). Under the Code this Court can issue such orders as are necessary or appropriate to carry out the provisions of Title 11. 11 U.S.C. § 105(a). *In re Howell*, 4 B.R. 102, 2 C.B.C.2d 177 (Bkrtcy.M.D.Tenn.1980). Freezing compensation rates at levels already determined to be adequate prior to the challenged procedural changes is not an attempt at redetermination but a reliance on what H.H.S. and its intermediary had already done. In protecting the rights of the parties pending decision this Court has the power to direct that statutes, including the Medicare Act, be "implemented through procedures other than those authorized by the Secretary." *Califano v. Yamasaki*, 442 U.S. 682, 705, 99 S.Ct. 2545, 2560, 61 L.Ed.2d 176 (1979). A temporary return to conditions which prevailed *ante litem* is not inappropriate. *Federal Leasing, Inc. v. Underwriters at Lloyd's*, 487 F.Supp. 1248, 1259 (D.Md.1980); *St. Charles Manufacturing Co. v. St. Charles Furniture Corp.*, 482 F.Supp. 397, 405 (N.D.Ill.1979). See also *Stenberg v. Cheker Oil Co.*, supra.

The statute requires payment on at least a monthly basis. 42 U.S.C. § 1395g. Interim payments "approximating the actual costs of the provider will be made on the most expeditious basis administratively feasible." 42 C.F.R. 405.454(a). While it is contemplated that interim compensation rates will be adjusted it is also the stated intent of H.H.S. that rate adjustments be small. 42 C.F.R. § 405.454(b). While it has not yet been established whether these provisions apply to the debtor their existence as part of the statutory scheme clearly recognizes the need for fiscal regularity in funding for Medicare services. In this case this goal has not been met. An injunction which assures some measure of regularity will allow the Trustee to engage in efficient management practices. It will also at least partially alleviate a legitimate concern regarding whether he should incur expenses when funding is uncertain. In these cir-

---

**25.** This is particularly true in that the debtor's functions as a provider should result in payments linked to reasonable charges for the services it performs. Unless the Medical Center has costs higher than reasonable charges, something which has not been asserted or proved in this case, it should be able to remain economically viable.

cumstances the fact that action by this Court will delay the impact of the rate determination process conducted by B.C.B.S. should not prevent the granting of the relief requested.

Bankruptcy courts are frequently confronted with situations in which the parties have avoided seeking statutory relief until problems became acute, often critical. In these cases troubled waters must often be oiled before proper administration can proceed. The realities of an immediate need for action if business functions are to continue may sometimes require dispensation with certain aspects of an administrative scheme until a situation is stabilized. As a balance any actions which are taken occur within the framework of a Title 11 case in which rights are delineated and protected by the Code. While courts have often been loathe to become involved in the complexities of the administrative process, *Matter of Shippers Interstate Service, Inc.*, 618 F.2d 9 (7th Cir. 1980); *In re Bel Air Chateau Hospital*, 611 F.2d 1248 (9th Cir. 1979); *Langhorne Gardens, Inc. v. Weinberger*, 371 F.Supp. 1216 (E.D.Pa.1974), and bankruptcy courts should defer to administrative expertise where possible, *Nathanson v. N.L.N.B.*, 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed.2d 23 (1952), judicial relief of the sort requested by the Trustee has been found appropriate in circumstances like those in this case and will be granted here. *Califano v. Yamasaki*, supra; *White v. Matthews*, supra; *Mt. Sinai Medical Center of Greater Miami, Inc. v. Matthews*, supra; *In re Seeburg Corp.*, 5 B.R. 364, 2 C.B.C.2d 880, 887 (Bkrtcy.N.D.Ill.1980); *In re Howell*, supra.

This memorandum constitutes the findings required by Bankruptcy Rule 752(a).