**In re RIVER LINE, INC., Debtor.**

**In re INLAND TRANSPORTATION COMPANY, INC., Debtor.**

**REBCO TOWING COMPANY, INC., Plaintiff,**

**v.**

**RIVER LINE, INC. and Inland Transportation Company, Inc., Defendants.**

**Bankruptcy Nos. 381–02897, 381–02851. Adv. No. 381–0613.**

United States Bankruptcy Court, M. D. Tennessee.

Jan. 27, 1982.

William R. O'Bryan, Jr., Nashville, Tenn., for plaintiff.

Irwin A. Deutscher, Nashville, Tenn., trustee for H & S Transp. Co.

Keith M. Lundin, M. Edward Owens, G. Rhea Bucy, Julie N. Jones, Russell F. Morris, Jr., Nashville, Tenn., for trustee.

James R. Kelley, Laurence M. Papel, Nashville, Tenn., for Inland Transp. Co.

C. Kinian Cosner, Jr., William H. Lassiter, Jr., Nashville, Tenn., Fritz G. Faerber, St. Louis, Mo., James L. Smith, Goodlettsville, Tenn., for River Line.

## MEMORANDUM

GEORGE C. PAINE, II, Bankruptcy Judge.

This matter is before the court on the plaintiff Rebco Towing Company's (hereinafter "Rebco") complaint against the defendants, River Line, Inc. (hereinafter "River Line") and Inland Transportation Company, Inc. (hereinafter "Inland"), for relief from the automatic stay imposed by 11 U.S.C. § 362. Irwin Deutscher, trustee for H & S Transportation Company, Inc. (hereinafter "H & S"), filed a motion to intervene on December 11, 1981. A pre-trial conference was held on December 15, 1981. The automatic stay was continued by order of this court and without objection by the parties through the hearing date of December 22, 1981. The court also granted the trustee's motion to intervene with the intervenor being considered a defendant for purposes of this adversary proceeding. The hearing on Rebco's motion was held on December 22, 1981. At the conclusion of this hearing, the court took Rebco's motion under advisement. Inland, H & S and J. W. Armstrong, Jr., d/b/a Capitol Marine (hereinafter "Armstrong"), subsequently filed a joint motion in this adversary proceeding to sell the M/V Celeste Campbell free and clear of liens pursuant to 11 U.S.C. § 362 or § 363. This motion was heard on January 14, 1982. Upon consideration of the proof presented by the parties at both of the hearings, stipulations, exhibits, briefs of the parties and the entire record, this court finds that Rebco's complaint for relief from the stay and the defendants' request for modification of the stay pursuant to 11

U.S.C. § 362 should be denied. The court further finds that the joint motion to sell the M/V Celeste Campbell free and clear of liens pursuant to 11 U.S.C. § 363 should be denied. In order to protect the interests of all parties, however, the court grants the defendants the authority to sell the M/V Celeste Campbell pursuant to 11 U.S.C. § 105, subject to this court's supervision. If the defendants cannot sell the M/V Celeste Campbell by May 1, 1982, then the vessel will be sold at public auction.

The following shall constitute findings of fact and conclusions of law pursuant to Rule 752 of the Federal Rules of Bankruptcy Procedure.

H & S, Inland and River Line have filed Chapter 11 petitions in this court. These petitions were filed, respectively, on September 4, 10 and 14 of 1981. All three companies were involved in the river transportation business. H & S was engaged in the supplying and operation of towboats on inland waterways of the United States. Inland, which both owned and chartered towboats, operated a towing company on the inland river system and River Line chartered barges to use in the shipment of freight on the inland river system. Armstrong, who has not filed a petition for relief in this court, holds an interest in all three debtor corporations. Armstrong is the president and 100% shareholder of Inland and owns 50% of the stock of River Line and 50% of the stock of River Transportation, Inc., (hereinafter "River Transportation"). H & S is a completely owned subsidiary of River Transportation. Armstrong is also an officer and director of the three debtor corporations.

In early 1980, Armstrong purchased the M/V Robert Ingle, official number 257640, from Rebco. The purchase price was $800,000.00. Of that amount, $80,000.00 was paid as a down payment and the balance of $720,000.00 was paid by delivery of a promissory note dated January 6, 1980. This note was secured by a first preferred ship mortgage on the vessel. The promissory note provided for 84 installments with numbers 1–3 each being $22,518.07, numbers 4–83 each being $13,994.84 and an 84th and final balloon payment. The interest rate was adjusted every six months to take into account the then prime rate of interest charged by First Tennessee Bank, N.A., Memphis, Tennessee. The preferred ship mortgage of Rebco was duly perfected. Shortly after the vessel was purchased, the name was changed to the M/V Celeste Campbell. As of the date of the hearing held on December 22, 1981, the amount of indebtedness owed by Armstrong to Rebco was $630,702.20, consisting of $594,633.68 in principal and $36,068.52 in accrued interest.

On or about January 29, 1980, Armstrong chartered the M/V Celeste Campbell to River Line. The charter called for a monthly charter hire of $15,000.00. The charter also had an option to purchase the vessel for $80,000.00 less a credit of 35% charter hire paid. The charter required that, in the event of any default by the charterer, the owner was required to give notice prior to terminating the charter. On or about April 1, 1980, River Line assigned all of its right, title and interest in the charter to Inland. Inland was the charterer of the M/V Celeste Campbell at the time of its Chapter 11 filing. Subsequent to the date of the charter assignment from River Line to Inland, Inland entered into an agreement with H & S whereby H & S would operate the vessel, which included supplying the crew, fuel, ordinary maintenance and expendables, in return for payment of an operating fee. This arrangement continued up to and through the date of filing of the Chapter 11 petitions by Inland and H & S. Prior to June or July, 1981, the M/V Celeste Campbell was engaged in the movement of bulk grain products and, subsequent to that time and through the filing of the Chapter 11 petitions for H & S and Inland, the vessel was used by H & S in the movement of clear petroleum products. Shortly after the vessel was purchased by Armstrong, a sewage system was installed to meet new Coast Guard regulations and various repairs and maintenance were performed to the steering gear and shaft. Without installment of the sewage system, which cost approximately $35,000.00, the vessel could not have been operated on the inland river system.

At the time of the filing of the H & S and Inland petitions, the M/V Celeste Campbell was operating a three barge oil tow on the lower river system. The barges were chartered from Southern Towing Company, an affiliate of Rebco. At the time of the filings, the M/V Celeste Campbell was covered under the fleet insurance policy maintained by H & S for the various towboats which it owned or operated. The insurance policy was obtained through the James L. Moore Insurance Agency, an affiliate of Rebco. Shortly after the filing of the Chapter 11 petition by Inland, the three oil barges were voluntarily surrendered to Southern Towing Company at Caruthersville, Missouri. The barge charter was terminated pursuant to order of this court. Shortly after that time, the M/V Celeste Campbell was seized by a United States Marshal acting pursuant to an order of the United States District Court for the Eastern District of Missouri. Rebco had instituted an *in rem* admiralty action against the vessel seeking to assert its rights under its preferred ship mortgage. Since the seizure, the vessel has been at the Caruthersville Marine Service dock with Rebco appointed as substitute custodian. A hearing was scheduled in the district court action in late November. Upon being advised by counsel for H & S and Inland of the interest claimed by those companies in the vessel, Rebco suspended prosecution of the district court action and instituted this adversary proceeding to seek termination of the automatic stay imposed by 11 U.S.C. § 362. The parties have stipulated that, while the arrest of the vessel is a violation of the automatic stay, no sanctions are sought because of the absence of knowledge and, following notice, suspension of prosecution by Rebco.

Rebco asserts that (1) this court lacks jurisdiction over the M/V Celeste Campbell, (2) venue is improper and (3) even if jurisdiction and venue are proper, Rebco should be granted relief from the stay imposed pursuant to 11 U.S.C. § 362. The defendants deny each of these allegations.

At the hearing of Rebco's complaint on December 22, 1981, Rebco presented the testimony of three witnesses to prove that its interest is being irreparably harmed by not allowing an immediate foreclosure sale on the M/V Celeste Campbell. Bruce Mechling, an appraiser for Merrill Marine, testified that he had been with Merrill Marine for eighteen months as an appraiser and that he previously had extensive experience as a marine engineer. Mr. Mechling had personally participated in the appraisal of some six to eight vessels. Mr. Mechling testified that he had personal knowledge of the value of two vessels in the horsepower class of the M/V Celeste Campbell. Both were approximately the same age and the same size. He indicated that both had been appraised between $800,000.00 and $825,000.00 and that one had sold for $725,000.00. Based on his personal examination of the M/V Celeste Campbell, he estimated that the value of the vessel would be $700,000.00 in a "normal market" and $500,000.00 in the current "depressed" market. Mr. Mechling further testified that, in today's market, the best way to sell a vessel would be by use of a broker.

Charles Southern, Vice-President of Rebco and of the James L. Moore Insurance Agency, also testified concerning the vessel. While he offered no opinion as to the value of the vessel, Mr. Southern stated that he procured insurance for the vessel showing a hull value of $900,000.00. This insured value was not a special insured-in-excess-of-fair-value amount but rather the normal fair market amount used by insurance companies.

William Henderson Barton, Jr., a 50% shareholder and president of H & S, testified that he had been unsuccessful in finding work for the M/V Celeste Campbell. He offered no opinion as to the value of the M/V Celeste Campbell.

In opposition to Rebco's motion, the defendants presented the testimony of Mr. Armstrong. As owner of the M/V Celeste Campbell, he testified that the vessel had a value between $775,000.00 and $875,000.00. Mr. Armstrong also testified that a public auction would be the worse way to sell a vessel.

At the conclusion of this hearing, the court took Rebco's complaint under advisement. The defendants subsequently submitted a joint motion to sell the M/V Celeste Campbell free and clear of liens. The defendants proposed that this court should authorize the sale of the M/V Celeste Campbell by a public auction or through a broker on or before May 1, 1982.

A hearing on the defendants' motion was held on January 14, 1982. In support of their motion, the defendants presented the testimony of Ralph Goodwin, a broker engaged in the charter and sale of river vessels. Mr. Goodwin testified that he had been employed as a broker by Marine Services for approximately two years. During this time, he had participated in the charter and sale of six to seven towboats and in the charter and sale of 60 to 65 barges. Mr. Goodwin testified that the value of the M/V Celeste Campbell would increase in the spring due to improving weather conditions. Mr. Goodwin further testified that, generally, people in the river transportation business preferred a private sale to a public auction.

Rebco opposed the defendants' motion, insisting that the sale of the M/V Celeste Campbell should be conducted in the admiralty foreclosure action currently pending in the United States District Court for the Eastern District of Missouri.

On January 22, 1982, the court ordered that the stay in this proceeding would remain in effect for six (6) additional days.

These issues are now before this court for final determination.

■ This court clearly possesses jurisdiction over the subject matter of this adversary proceeding.[1] 28 U.S.C. § 1471 outlines the jurisdictional basis of the federal bankruptcy courts.[2] Section 1471(e) grants the bankruptcy court in which a case under title 11 is initiated "exclusive jurisdiction of all the property, wherever located of the debtor, as of the commencement of such case." Under the guidelines of § 1471, the bankruptcy court also possesses jurisdiction over all "civil proceedings arising under Title 11 or arising in or *related to* cases under Title 11." (emphasis added). *Andrews v. Blue Cross and Blue Shield of Michigan*, 9 B.R. 644, 647 (Bkrtcy.E.D.Mich.S.D.1981). *See also General Electric Credit Corp. v. Bullock*, 11 B.R. 73, 74–75 (Bkrtcy.E.D.Va.1981); *Blackwelder Furniture Co. v. Drexel-Heritage Furnishings, Inc.*, 7 B.R. 328, 332–334 (Bkrtcy.W.D.N.C.1980); *Griffith v. Realty Executives, Inc.*, 6 B.R. 750, 755 (Bkrtcy.D. N.M.1980).

In this case, Armstrong chartered the M/V Celeste Campbell to River Line, which subsequently assigned the charter to Inland. Armstrong has taken no action to terminate this charter in accordance with the agreement entered into on January 29, 1980. Nor have the debtors elected to reject this charter agreement pursuant to 11 U.S.C. § 365(d)(2).[3] The debtors thus still

---

1. It is interesting to note that Rebco states in its complaint that this court does have jurisdiction pursuant to 11 U.S.C. § 1471.

2. 11 U.S.C. § 1471 provides:

"(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

(d) Subsection (b) or (c) of this section does not prevent a district court or a bankruptcy court, in the interest of justice, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. Such abstention, or a decision not to abstain, is not reviewable by appeal or otherwise.

(e) The bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all of the property, wherever located, of the debtor, as of the commencement of such case.

3. 11 U.S.C. § 365(d)(2) provides:

"In a case under chapter 9, 11, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of the debtor at any time before the confirmation of

retain a property interest in the M/V Celeste Campbell. The ultimate disposition of the M/V Celeste Campbell would clearly impact on the debtors' property rights and, therefore, this court has jurisdiction pursuant to § 1471 to consider any civil proceeding involving the sale of the vessel. Even under the limited jurisdictional provisions of the old Bankruptcy Act, this court would have subject matter jurisdiction over the M/V Celeste Campbell due to the debtors' continued possession of the vessel. *See Peter Pan Seafoods, Inc. v. M/V Polar Viking,* 446 F.Supp. 1283, 1284–1286 (W.D.Wash. 1977); *Hartigan v. Blaeser Development Corp.,* 11 B.R. 982, 984–985 (Bkrtcy.S.D.N.Y.1981).

■ Nor can the plaintiff Rebco complain that venue is improper in this court. Rebco, by initiating this adversary proceeding in this court, has effectively relinquished its right to object to venue. *Olberding v. Illinois Cent. R.R. Co.,* 346 U.S. 338, 340, 74 S.Ct. 83, 85, 98 L.Ed. 39 (1953); *United States, etc. v. Maryland Cas. Co.,* 573 F.2d 245, 248 (5th Cir. 1978).

Having determined the jurisdictional and venue issues, the court must now consider Rebco's complaint for relief from the stay pursuant to 11 U.S.C. § 362. Section 362(d) provides:

"On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization."

a plan, but the court, on request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease."

■ In seeking relief from the automatic stay, the creditor has the burden of proof on the issue of the debtor's equity in the collateral, with the debtor having the burden of proof on all other issues, including adequate protection of the creditor. 11 U.S.C. § 362(g).

■ In the present case, Rebco's lien against the M/V Celeste Campbell is approximately $635,000.00, with a daily accrual of about $256.00 in interest. The vessel was purchased early in 1980 for $800,000.00 and, since that time, a sewage system, which cost approximately $35,000.00, has been installed on the vessel. Armstrong, the owner of the M/V Celeste Campbell, testified that it had a value of between $775,000.00 and $875,000.00 and Charles Southern, Vice-President of the James L. Moore Insurance Agency, testified that he procured insurance for the vessel showing a hull value of $900,000.00. The only testimony indicating a lower value for the M/V Celeste Campbell was the statement of Bruce Mechling, the appraiser who estimated that the vessel was only worth $500,000.00 in the current "depressed" market. Even Mr. Mechling, however, admitted that the vessel would be worth $700,000.00 in a "normal" market. This statement is especially significant in light of the broker Ralph Goodwin's testimony that the vessel's value would increase in the spring. Under these circumstances, the court finds that Rebco's lien on the vessel is adequately protected. Furthermore, since Rebco has not proven the validity of any other outstanding claims against the M/V Celeste Campbell, the court concludes that equity exists in the property. Accordingly, both Rebco's complaint for relief from the stay and the defendants' request for modification of the stay pursuant to 11 U.S.C. § 362(d) are denied.

■ The defendants also seek to sell the M/V Celeste Campbell free and clear of

Pursuant to 11 U.S.C. § 1107(a), the debtor-in-possession is given virtually the same rights and powers as a trustee.

liens pursuant to 11 U.S.C. § 363.[4] Section 363, however, only permits the debtor-in-possession to sell "property of the estate." Since the M/V Celeste Campbell is owned by Armstrong and not the debtors-in-possession, the defendants' joint motion must be denied.

The aforementioned findings of the court would necessarily result in the continuation of the stay, even though all parties agree that the M/V Celeste Campbell should be sold. For this reason, the court deems it necessary for the efficient administration of the estate to provide for the sale of the vessel pursuant to 11 U.S.C. § 105. Section 105(a) gives the court authority to issue such an order, providing as follows:

> "The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

The only real dispute between the parties is where and in what manner the M/V Celeste Campbell should be sold. Rebco insists that the sale of the vessel should be conducted in the admiralty foreclosure proceedings currently pending in the United States District Court for the Eastern District of Missouri. The expanded jurisdictional basis of the Bankruptcy Code, however, contemplates that all civil proceedings relating to a bankruptcy case shall be resolved by the bankruptcy court unless the court, in its discretion, decides to abstain from hearing the matter. *See* H.R. Rep.No. 95–595, 95th Cong., 1st Sess. 445–446, *reprinted in* [1978] U.S.Code Cong. and Ad.News 5787, 5963; Sen.Rep.No. 95–989, 95th Cong., 1st Sess. 153–154, *reprinted in* [1978] U.S.Code Cong. and Ad.News 5787, 5939–5940.

In the present case, the charter rights of the debtors River Line and Inland in the M/V Celeste Campbell are interwoven with the ownership interest of Armstrong, who is a principal shareholder, officer and director in both River Line and Inland. The charter rights of River Line and Inland are necessarily affected by the ultimate disposition of the vessel. This court has an obligation in this situation to supervise the sale of the vessel to insure that creditors obtain the maximum benefit from the sale. This protection extends to creditors in the admiralty foreclosure proceeding, whose liens will be recognized by this court if funds are available from the sale. If funds are not available, then this court will include these claims in the bankruptcy proceedings. The burden is on the party conducting the sale to convince this court that the sale is in the best interests of all creditors. In contrast, as Rebco readily admits, the federal marshal in the Eastern District of Missouri would sell the vessel at a public auction pursuant to 28 U.S.C. § 2001, unless the district court orders otherwise. 28 U.S.C. § 2004. As the testimony of Mechling, Southern and Armstrong confirms, a public auction of this vessel would in all likelihood bring a lower price than a private sale. Furthermore, any parties objecting to this public auction would have to bear the burden and expense of proposing a different type of sale to the district court.

For these reasons, the court concludes that the M/V Celeste Campbell should be sold by the defendants subject to the supervision of this court. An order shall be prepared by the joint movants and filed within seven (7) days of the date of this memorandum giving the defendants the necessary authority to attempt to sell this vessel. This order shall provide for protection of Rebco's preferred ship mortgage and all other liens against the vessel in the admiralty proceeding or otherwise should funds be available from the sale. Further, if the defendants cannot sell the vessel by May 1, 1982, then it will be sold at public auction.

---

4. 11 U.S.C. § 363(b) provides:

    "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."